**2015 UT App 194**

## THE UTAH COURT OF APPEALS

BONNIE R. FOWLER,
Appellant,
*v.*
MARK MCDOUGAL & ASSOCIATES AND DON R. SCHOW
Appellees.

Per Curiam Decision
No. 20150394-CA
Filed August 6, 2015

Third District Court, Salt Lake Department
The Honorable Royal I. Hansen
No. 130907844

Bonnie R. Fowler, Appellant Pro Se

Don R. Schow, Appellee Pro Se

Before JUDGES STEPHEN L. ROTH, JOHN A. PEARCE, and
KATE A. TOOMEY.

PER CURIAM:

¶1     Appellant Bonnie R. Fowler appeals the grant of summary judgment on her complaint for legal malpractice and related claims. This case is before the court on a sua sponte motion for summary judgment. We affirm.

¶2     In 1996, Fowler obtained a Decree of Divorce requiring her husband (Husband) to pay child support and alimony. The Decree stated, "In the event that [Husband's] child support obligation is changed in the future, the amount of alimony will automatically be adjusted so that the alimony and child support

obligation added together equal $900.00."[1] In October 2012, Husband moved to terminate alimony based upon Utah Code section 30-3-5(8)(h), which is now section 30-3-5(8)(j). *See* Utah Code Ann. § 30-3-5(8)(j) (Michie Supp. 1995) (current version Utah Code Ann. § 30-3-5(8)(j) (LexisNexis 2013). That section provides, "Alimony may not be ordered for a duration longer than the number of years that the marriage existed unless, at any time prior to the termination of alimony, the court finds extenuating circumstances that justify the payment of alimony for a longer period of time." Id. The effective date of the amended statutory language was May 1, 1995; the divorce complaint was filed in September 1995; and the decree was entered in April 1996. Accordingly, the commissioner ruled that as of the end of July 2012, Husband's alimony payments had continued for a period equal to the duration of the marriage and that his obligation to pay alimony terminated by operation of law. In November 2012, Fowler filed a written objection to the ruling, stating that Husband had agreed to pay her $900 per month unless and until she remarried. She also stated, "My attorney, Don Scow [sic], referred to alimony being limited, but because of the negotiated arrangement and offer from Mr. Fowler, I insisted that the limitation was irrelevant." The district court ruled that alimony terminated by operation of law at the end of July 2012.

¶3     In November 2013, Fowler filed the complaint in this case asserting legal malpractice and related claims against her former attorney, Don R. Schow, and the law firm that employed him as an associate, Mark McDougal & Associates.[2] Fowler alleged that

---

1. The parties' children are now adults who are no longer entitled to child support.

2. Fowler also named as defendants three other attorneys and the firm Brent Wamsley & Associates, all of whom were dismissed from the case because she could not establish she ever

(continued…)

Schow committed malpractice by failing to recognize the statutory limitation on the duration of alimony. She also asserted claims alleging defamation and intentional infliction of emotional distress, all of which were based on Schow's case-related statements in response to her malpractice claims against him. Fowler and Schow filed cross-motions for summary judgment.[3]

¶4     The district court first determined that Schow's allegedly defamatory statements "were made . . . in the course of the present proceeding and referred directly to [her] malpractice claims." The Utah Supreme Court explained in *DeBry v. Godbe*, 1999 UT 111, 992 P.2d 979, that for the judicial proceeding privilege to apply, the statements must be "(1) made during or in the course of a judicial proceeding; (2) have some reference to the subject matter of the proceeding; and (3) be made by someone acting in the capacity of judge, juror, witness, litigant, or counsel." *Id.* ¶ 11 (citation and internal quotation marks omitted)). Accordingly, the district court determined that the judicial proceeding privilege applied and Fowler could not establish a prima facie case for defamation based on those statements. *See Jacob v. Bezzant*, 2009 UT 37, ¶ 21, 212 P.3d 535 (stating that a prima facie case for defamation must, among other factors, demonstrate that "the statements were not subject

---

(…continued)
had an attorney-client relationship with those defendants. The district court did not initially dismiss Mark McDougal & Associates, reasoning that the firm could be vicariously liable for legal malpractice as Schow's employer. The disposition of the legal malpractice claim disposed of any vicarious liability claim.

3. Contrary to Fowler's assertions before this court, the district court also expressly denied her motion to strike and sustained Schow's objection to it in a footnote in the summary judgment decision.

to privilege" (citation and internal quotation marks omitted)). Insofar as the intentional infliction of emotional distress claims were based upon the allegedly defamatory statements, the district court determined that the judicial proceeding privilege also barred the claim. *See Price v. Armour*, 949 P.2d 1251, 1258 (Utah 1997) ("It is essential that the privilege apply to all claims arising from the same allegedly defamatory statements . . . ."). The district court therefore did not err in granting summary judgment on the defamation and intentional infliction of emotional distress claims.

¶5 "In a legal malpractice action based on negligence, a plaintiff must prove (i) an attorney-client relationship; (ii) a duty of the attorney to the client arising from their relationship; (iii) a breach of that duty; (iv) a causal connection between the breach of duty and the resulting injury to the client; and (v) actual damages." *Christensen & Jensen, PC v. Barrett & Daines*, 2008 UT 64, ¶ 22, 194 P.3d 931 (citation and internal quotation marks omitted). The elements for a legal malpractice claim based upon a breach of fiduciary duty are "(1) an attorney-client relationship; (2) breach of the attorney's fiduciary duty to the client; (3) causation, both actual and proximate; and (4) damages suffered by the client." *Id.* ¶ 23 (citation and internal quotation marks omitted). The elements of the two foregoing theories of legal malpractice are "substantially the same," *id.* ¶ 23, while a legal malpractice claim alleging a breach of contract is governed by "[r]ules of contract, not rules of legal malpractice," i*d.* ¶ 24 (alteration in original) (citation and internal quotation marks omitted). However, each theory requires a demonstration that, absent the conduct complained of, there would be a benefit t o the client. *Id.* ¶ 26.

¶6 Fowler claimed that Schow committed malpractice by failing to recognize that Utah law limited alimony to a period equal to the length of the marriage. Schow moved for summary judgment arguing, in part, that documents filed in the divorce action demonstrated that he had informed Fowler of the

limitation. Specifically, Schow argued that the Objection to the Commissioner's Ruling that Fowler herself had filed in the divorce action demonstrated that he had informed Fowler of the limitation. In granting summary judgment, the district court reasoned that,

> by including in the Objection to the Commissioner's Ruling, filed in the prior case, a statement that Schow informed her that alimony is limited, Plaintiff certified this factual contention as having evidentiary support.[4] Plaintiff now seeks to create a genuine issue of material fact by contradicting this prior sworn statement by stating in her affidavit filed in support of the Motion for Summary Judgment that Schow did not know about the limitation of alimony award provision in the Utah Code. However, "when a party takes a clear position in a [statement], he may not thereafter raise an issue of fact by his own affidavit which contradicts his [statement], unless he can provide an explanation of the discrepancy." *Webster v. Sill*, 675 P.2d 1170, 1172--73 (Utah 1983). Indeed, "[a]n affidavit, as a matter of law, cannot contradict [a] prior sworn statement . . . which was clear and unequivocal, [unless] the affidavit [] state[s] an adequate reason for the contradiction." *Brinton v. IHC Hosps., Inc.*, 973 P.2d 956, 973 (Utah 1998).

---

4. *See* Utah R. Civ. P. 11(b)(3) ("By presenting a pleading, written motion, or other paper to the court . . . an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the allegations and other factual contentions have evidentiary support.").

¶7      Because her legal malpractice claim was dependent upon an allegation that Schow did not know of the statutory time limitation on alimony when he drafted the complaint and divorce decree, her earlier statements before the divorce court directly contradicted the allegations made in her malpractice claim. Although Fowler claimed the earlier statements were taken out of context, we agree with the district court that there is "no contextual support for an alternate reading of [Fowler's] statement." Fowler conceded in the divorce case that Schow knew of the statutory alimony limitation and her subsequent contradictory statements did not create a genuine issue of material fact pertaining to the legal malpractice claim and factually-related claims. Furthermore, insofar as Fowler made additional claims of intentional infliction of emotional distress based upon the alleged malpractice, those claims were necessarily disposed of by the failure of the malpractice claim.

¶8      Accordingly, we affirm the summary judgment in favor of Don R. Schow, which necessarily resolves the vicarious liability claims against Mark McDougal & Associates.

———————