**2015 UT App 254**

## THE UTAH COURT OF APPEALS

KEITH SCOTT BROWN,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Memorandum Decision
No. 20140387-CA
Filed October 8, 2015

Fourth District Court, Provo Department
The Honorable David N. Mortensen
No. 130401823

Taylor C. Hartley and Stephanie R. Large, Attorneys
for Appellant

Sean D. Reyes and Andrew F. Peterson, Attorneys
for Appellee

JUDGE GREGORY K. ORME authored this Memorandum Decision,
in which JUDGES STEPHEN L. ROTH and MICHELE M. CHRISTIANSEN
concurred.

ORME, Judge:

¶1     Appellant Keith Scott Brown (Defendant) appeals the district court's dismissal of his petition for post-conviction relief. We agree the petition was untimely and affirm.

¶2     In February 2011, Defendant pled guilty to one count of sodomy on a child, a first degree felony, and two counts of sexual abuse of a child, second degree felonies. On March 31, 2011, the district court sentenced him to concurrent statutory prison terms of ten years to life for the first degree felony and one to fifteen years on each of the second degree felonies.

Defendant did not seek to withdraw his guilty pleas at any time before sentencing, and he did not file a direct appeal.

¶3 On November 6, 2012, more than a year and a half after he was sentenced, Defendant filed what he titled a "motion for misplea," seeking to set aside his guilty pleas on the ground that when he pled guilty, he was under the influence of medication that rendered him unable to knowingly and voluntarily plead guilty. Defendant did not claim that he was unaware that he was under the influence. Instead, he claimed that "he did not tell his attorney about his prescription drug use," although the attorney was apparently aware of a serious automobile accident that Defendant had been in only days before. The district court denied Defendant's motion, finding that his "pleas were knowing and voluntary because he showed no signs of impairment and because he expressly disavowed prescription drug use when asked at his initial appearance hearing." Defendant appealed, and this court summarily dismissed his appeal for lack of jurisdiction. *See State v. Brown*, 2013 UT App 99, ¶ 1, 300 P.3d 1289 (per curiam). Defendant filed petitions for a writ of certiorari in both the Utah Supreme Court and the United States Supreme Court. Both petitions were denied. *State v. Brown*, 308 P.3d 536 (Utah 2013); *Brown v. Utah*, 134 S. Ct. 544 (2013).

¶4 On November 25, 2013, Defendant filed a petition for post-conviction relief under Utah's Post–Conviction Remedies Act (the PCRA). *See* Utah Code Ann. § 78B-9-101 to -405 (LexisNexis 2012). Defendant claimed that he received ineffective assistance of counsel at the time his guilty pleas were entered due to trial counsel's incorrect advice about the consequences of pleading guilty and because trial counsel operated under several conflicts of interest when he urged Defendant to plead guilty. In addition, Defendant repeated his claim that his guilty pleas were not knowingly and voluntarily made because he was on pain medication when he entered them. The district court found that all of the pertinent facts supporting

Defendant's ineffective-assistance claims were known to Defendant before he entered his pleas and that more than one year had passed before Defendant filed his PCRA petition.[1] Although Defendant claimed that "he came to a realization about [the] real impact of his sentence at some point long after sentencing," the district court concluded that "coming to a better or more complete understanding of the practical import of his plea is different [from] coming to know new evidentiary facts. The record reflects that the pertinent facts were known to [Defendant] long before, more than a year before, [he] filed the present petition."

¶5      The district court also determined that "[a]ll of the facts concerning the voluntariness of [Defendant]'s plea, particularly his injuries from a car accident and any medication [prescribed as a result], were known at the time of the plea, certainly were known [in the] six weeks between the plea [and sentencing.]" The court concluded that Defendant's challenge to the validity of his pleas was procedurally barred because he could have moved to withdraw his pleas but did not. Accordingly, the court denied Defendant's PCRA petition as untimely. Defendant appeals.

¶6      On appeal, Defendant first contends that he received ineffective assistance of counsel in two respects. He contends that trial counsel "[a]ffirmatively misrepresent[ed] the consequences" of Defendant's guilty pleas by assuring him that he would spend only "two to three years in prison" because trial counsel would "wine and dine" the Board of Pardons and Parole (the Board). Defendant also contends that trial counsel operated

---

1. Defendant was sentenced on March 31, 2011. Thus, he had until May 2, 2011, to file a direct appeal, which he did not do. Consequently, Defendant's cause of action accrued on that date and he had one year, until May 2, 2012, in which to file a timely PCRA petition. Defendant did not file his current petition until November 25, 2013, some eighteen months late.

under various conflicts of interest, including that (1) trial counsel's "own daughter had business dealings with [Defendant]" that might have put her at risks similar to those faced by his known victims, (2) trial counsel "could have been called as a potential witness against" Defendant, (3) trial counsel was related to Defendant by marriage, and (4) trial counsel's "law firm had recently experienced negative media exposure that made [trial counsel] not want to draw any more media attention to his firm." Second, Defendant contends that his pleas were unknowing and involuntary because he was on pain medication at the time he entered his guilty pleas and because of trial counsel's "misinformation" regarding the consequences of his guilty pleas. "We review an appeal from an order dismissing or denying a petition for post-conviction relief for correctness without deference to the lower court's conclusions of law." *Taylor v. State*, 2012 UT 5, ¶ 8, 270 P.3d 471 (citation and internal quotation marks omitted).

¶7    Under the PCRA, "[a] petitioner is entitled to relief only if the petition is filed within one year after the cause of action has accrued." Utah Code Ann. § 78B-9-107(1) (LexisNexis 2012).[2] A cause of action accrues on the latest of several possible dates, including "the last day for filing an appeal from the entry of the final judgment of conviction, if no appeal is taken," and "the date on which [the] petitioner knew or should have known, in the exercise of reasonable diligence, of evidentiary facts on which the petition is based." *Id.* § 78B-9-107(2)(a), (e). The PCRA also provides that

---

2. Because there have been no changes to the statutory provisions in effect at the relevant time, we cite the current version of the Utah Code Annotated as a convenience to the reader.

> [t]he limitations period is tolled for any period during which the petitioner was prevented from filing a petition due to state action in violation of the United States Constitution, or due to physical or mental incapacity. The petitioner has the burden of proving by a preponderance of the evidence that the petitioner is entitled to relief under this Subsection (3).

*Id.* § 78B-9-107(3). Defendant does not allege that any action by the State in violation of the United States Constitution, or any physical or mental incapacity, prevented him from timely filing his petition. Rather, relying on the later accrual date under section 78B-9-107(2)(e), he contends that his PCRA petition was timely filed and should not be time-barred because he filed it "within one year of recognizing the significance of his attorney's ineffective assistance of counsel."

¶8     More specifically, Defendant contends that he had no reason to doubt trial counsel's statements regarding the Board until he learned that his first hearing date before the Board "would not actually be until after he had been in prison for over seven years and that it could not come any sooner by any effort on anyone's part." He also claims that he did not realize the significance of trial counsel's conflicts of interest until he retained his current counsel. According to Defendant, "just because [he] may have known of these basic facts at the time of sentencing, he did not understand their significance until later." The State contends that basing the PCRA's cause-of-action accrual date under section 78B-9-107(2)(e) "on when a petitioner subjectively becomes aware of the legal significance of the facts he already knows would essentially eviscerate the PCRA's statute of limitations, leaving no effective time limit to filing a post-conviction petition."

¶9     No pertinent Utah decision has been called to our attention by the parties, but in *Owens v. Boyd*, 235 F.3d 356 (7th

Cir. 2000), the Seventh Circuit addressed whether the one-year time limit to file a petition for collateral relief under federal law, see 28 U.S.C.A. § 2244(d)(1) (West 2006), "begins when a prisoner *actually understands* what legal theories are available." *Owens*, 235 F.3d at 359 (emphasis in original). Under section 2244(d)(1), "[a] state prisoner who wants collateral relief from federal court must file the federal petition within one year from the latest of" several dates, including "'the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.'" *Id.* at 357 (quoting 28 U.S.C. § 2244(d)(1)(D) (West 2006)). The court noted that "the time commences when the factual predicate 'could have been discovered through the exercise of due diligence', not when it was actually discovered by a given prisoner." *Id.* at 359. Moreover, "the trigger in § 2244(d)(1)(D) is (actual or imputed) discovery of the claim's 'factual predicate', not recognition of the facts' legal significance." *Id.* Thus, the court concluded, the period in which to file "begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance. If § 2244(d)(1) used a subjective rather than an objective standard, then there would be no effective time limit[.]" *Id.*

¶10    Although we are not bound by *Owens*, its reasoning is compelling. Under section 78B-9-107 of the Utah Code, the time to file a post-conviction petition begins when the "petitioner knew or should have known, in the exercise of reasonable diligence, of evidentiary facts on which the petition is based." Utah Code Ann. § 78B-9-107(2)(e). Thus, similar to section 2244(d)(1)(D) of the United States Code, the "trigger" under section 78B-9-107(2)(e) is actual or imputed discovery of the evidentiary facts supporting the petition. *See Owens*, 235 F.3d at 359. *See also Black's Law Dictionary* 669 (9th ed. 2009) (stating that an "evidentiary fact" is "[a] fact that is necessary for or leads to the determination of an ultimate fact"). Accordingly, the time for filing begins to run when the petitioner knows or, in the

exercise of reasonable diligence, should have known the evidentiary facts and "not when the [petitioner] recognizes their legal significance." *See Owens*, 235 F.3d at 359. "If [section 78B-9-107(2)(e)] used a subjective rather than an objective standard, then there would be no effective time limit[.]" *See id.*

¶11    Here, the "evidentiary facts" that form the basis of Defendant's claims include (1) trial counsel's alleged statement that Defendant could be released from prison "in two to three years," (2) trial counsel's alleged conflicts of interest, and (3) the fact that Defendant was on recently prescribed pain medication when he entered his guilty pleas. Defendant does not claim that he was unaware of these facts when he pled guilty. Indeed, he concedes that he "may have known of these basic facts at the time of sentencing" but that he "did not understand their significance" or, in the case of counsel's alleged statement about Defendant's likely release date, its falsity, until later.

¶12    Defendant cites a civil case, *Merkley v. Beaslin*, 778 P.2d 16 (Utah Ct. App. 1989), for the proposition that "[t]he client is not an expert; he cannot be expected to recognize professional negligence if he sees it, and he should not be expected to watch over the professional or to retain a second professional to do so." *See id.* at 19 (citation and internal quotation marks omitted). We are not persuaded. Although we are cognizant of the fact that Defendant's knowledge of the law is limited, "[i]f these considerations delay[ed] the period of limitations until the [petitioner] has spent a few years in the [prison] law library," *Owens*, 235 F.3d at 359, section 78B-9-107(2) of the Utah Code might as well not exist, *see id*.

¶13    The district court concluded that "coming to a better or more complete understanding of the practical import of his plea is different [from] coming to know new evidentiary facts." We agree. Under the PCRA, Defendant's subjective appreciation of the facts supporting his petition is irrelevant.

¶14    Defendant asserts that trial counsel misinformed him that trial counsel could bargain with the Board to secure Defendant's release from prison in no more than two to three years. The district court found that "[b]oth the initial appearance hearing and the sentencing hearing put [Defendant] on notice of the terms of his likely incarceration." The court observed that before Defendant entered his pleas, he acknowledged "the minimum mandatory penalty associated with each count" and "that the State had recommended a sentence, on one count alone, of 10 years to life, with additional sanctions for other counts." Indeed, in his plea affidavit, Defendant specifically affirmed, "I know that by pleading guilty to a crime that carries a mandatory penalty, I will be subjecting myself to serving a mandatory penalty for that crime." He further acknowledged that the State was recommending a "sentence of 10 years to life."[3]

¶15    In addition, at Defendant's sentencing hearing but before imposition of sentence, the district court emphasized that "this was a potential life sentence" and stated that although parole would likely be considered at some point, the court believed that the Board "should consider the fact that there could have been many more charges as there were many more violations as expressed by the victims in this case." The sentencing judge informed Defendant, "[You] will not . . . and should not be released in this case unless you have successfully completed sex offender treatment. If that's not accomplished, I do not anticipate that you will be released." Accordingly, the district court concluded that "the facts of the minimum mandatory nature of this sentence were placed squarely before [Defendant] at the time of sentencing such that if [he] understood that something else would have been expected, he should have filed a motion to withdraw his plea." We agree. Regardless of what trial counsel

---

3. The sentencing matrix in the presentence investigation report also estimated that Defendant would serve around eleven years of an indeterminate prison sentence.

may have told him, Defendant was aware, or should have been aware, from the statements in his plea affidavit and from the district court's own statements, that he faced a long sentence.

¶16 Moreover, we conclude that the facts supporting Defendant's ineffective-assistance claims based on trial counsel's alleged conflicts of interest were known to Defendant before he was sentenced. Defendant claims that he received ineffective assistance of counsel because (1) trial counsel's "own daughter had business dealings with [Defendant]," (2) trial counsel "could have been called as a potential witness against" Defendant, (3) trial counsel was related to Defendant by marriage, and (4) trial counsel's "law firm had recently experienced negative media exposure that made [trial counsel] not want to draw any more media attention to his firm." The district court found that Defendant "offers no basis for this court to conclude that the facts" concerning Defendant's conflict-of-interest claims "all were not known to [Defendant] before he entered his plea, and thus before he was sentenced." We agree with the district court. Indeed, as the State correctly points out, on appeal Defendant "offers no reason to suggest that he either did not or could not have known of [the alleged conflicts of interest] earlier."

¶17 Lastly, the evidence Defendant offered to support his claim that his pleas were unknowing and involuntary was known to him, or should have been known to him, at the time he entered his pleas. Defendant offered several pieces of evidence to support this claim, including an affidavit describing the circumstances of a severe car crash he was involved in just a few days before he entered his pleas and his mental state at the time he entered his pleas; a newspaper account of the crash; photographs of the car both before and after the crash; medical records detailing his injuries from the crash; and his prescription medication records. The State notes that Defendant attached this evidence to his "motion for misplea," which he filed on November 6, 2012. As the State points out, "[e]ven if [Defendant] could somehow show that the evidence was unavailable to him

when he pleaded, it was unquestionably available to him when he signed his affidavit [supporting his motion for misplea]." Yet Defendant did not file his current petition until November 25, 2013, more than one year after filing his motion for misplea. We agree with the State and conclude that this evidence establishes that Defendant was aware of the facts supporting his motion for misplea no later than October 2012, more than one year before he filed his current PCRA petition.

¶18 In sum, we conclude that under the PCRA, Defendant's subjective appreciation of the facts supporting his ineffective-assistance claims is essentially irrelevant. Defendant was aware, or should have been aware, of all of the principal facts supporting his various claims by the time he was sentenced. The time for Defendant to file a direct appeal expired on May 2, 2011. *See supra* note 1. As a result, his cause of action accrued on May 2, 2011, and he had one year, or until May 2, 2012, in which to file a timely PCRA petition. Defendant did not file his petition until November 25, 2013, some eighteen months later. Accordingly, the district court did not err in concluding that Defendant's petition was untimely under the PCRA.

¶19 In the alternative, Defendant contends that if his petition is otherwise time-barred under the PCRA, "it should be allowed to proceed under the egregious injustice exception [to] the act's procedural bars." The State argues that Defendant's "argument for an exception to the time and procedural bars is unpreserved and inadequately briefed." We agree that the egregious-injustice argument was unpreserved, and thus we have no occasion to decide whether the argument was also inadequately briefed on appeal.

¶20 "'As a general rule, claims not raised before the [district] court may not be raised on appeal.'" *Winward v. State*, 2012 UT 85, ¶ 9, 293 P.3d 259 (alteration in original) (quoting *State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346). "An issue is preserved for appeal when it has been presented to the district court in such a

way that the court has an opportunity to rule on [it]." *Id.* (alteration in original) (citation and internal quotation marks omitted). When an argument is unpreserved, "we will not address it for the first time on appeal unless the party can prove either plain error or exceptional circumstances." *Id.* In this case, Defendant failed to present his egregious-injustice argument to the district court, and he does not argue the applicability of either of the exceptions to our preservation rule. We therefore do not reach the egregious-injustice argument.

¶21 Finally, Defendant directly challenges the validity of his guilty pleas. He contends that he "could not have understood and did not understand all of the consequences to his pleading guilty" based on trial counsel's misinformation and because of his "overdose of prescription pain medication" due to his car accident. We concluded above that the district court did not err in finding Defendant's claims, including his ineffective-assistance claims, untimely under the PCRA. *See supra* ¶ 18. It follows that his claim about his competence to plead guilty is likewise procedurally barred.

¶22 The PCRA precludes relief for any claim that "could have been but was not raised at trial or on appeal." Utah Code Ann. § 78B-9-106(1)(c) (LexisNexis 2012). This is because "a petition for post-conviction relief is a collateral attack of a conviction and/or sentence and is not a substitute for direct appellate review." *Loose v. State*, 2006 UT App 149, ¶ 13, 135 P.3d 886 (citation and internal quotation marks omitted). In this case, the district court concluded that Defendant's "challenge to the validity of his pleas [was] procedurally barred because he could have, but did not, move to withdraw his pleas." We agree.

¶23 Section 77-13-6 of the Utah Code provides that "[a] plea of guilty . . . may be withdrawn only upon leave of the court and a showing that it was not knowingly and voluntarily made." Utah Code Ann. § 77-13-6(2)(a). Moreover, that section provides that "[a] request to withdraw a plea of guilty . . . shall be made by

motion before sentence is announced." *Id.* § 77-13-6(2)(b). Defendant did not file a motion to withdraw his pleas.

¶24   Defendant asserts that he "was incapacitated by the overdosed prescription pain medication that he had used after the severe car accident." According to Defendant, "[i]t cannot be underestimated how important it was that his counsel assist the Court, as an officer of the court, to help it know of [Defendant]'s incorrect answers and to inquire further into his mental and physical capacity." However, Defendant provides no explanation as to why the six weeks between when he entered his guilty pleas and when his sentencing hearing was convened was an insufficient amount of time for him to recognize the alleged flaws in his pleas and to move to withdraw them. The district court concluded that if Defendant "believed he was impaired when he entered his pleas he had six weeks to contemplate this issue and could have moved to withdraw the pleas." We agree with this pivotal reasoning of the district court and affirm the district court's denial of Defendant's post-conviction petition.

———————